IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH NICKS, | : | CIVIL NO . 3:CV-05-0919 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN JOSEPH SMITH, | : | |
| Respondent | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Joseph Nicks ("Nicks"), a District of Columbia parole violator, who is in the custody of the Federal Bureau of Prisons and is presently confined at the United States Penitentiary at Lewisburg, Lewisburg, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). The petition is ripe for disposition. For the reasons set forth below, the petition will be denied.

## I. Background

Nicks was sentenced by the Superior Court for the District of Columbia on February 12, 1981, to a term of imprisonment of twenty years to life for first degree murder while armed and carrying a pistol without a license. On April 6, 1999, The United States Parole Commission ("Commission") conducted Nicks' initial parole hearing,[1] at which the hearing examiner applied

---

[1] On August 5, 1998, "the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code" was transferred to the Commission pursuant to the National Capital Revitalization and Self Government Improvement Act of 1997 ("Revitalization Act"), Pub.L.No. 105-33, sec 11231(a)(1), 111 Stat. 712, 745; D.C. Code § 24-1231.

the amended and modified District of Columbia parole regulations codified at 28 C.F.R. § 2.80 et. seq, in determining Nicks' Salient Factor Score (SFS) and Base Point Score. (Doc. 9-2, pp. 5-7). Nicks was assigned a Salient Factor Score (SFS) of 2, which is computed based upon prior convictions, prior commitments in excess of thirty days, age at time of offense, recent commitment free period, probation, parole, confinement and escape status. His Base Point Score, or risk level, was found to be a 9, which recommends a rehearing guideline of 22-28 months. This number takes into consideration the SFS, current or prior violence and death of victim or high level of violence. He achieved a one point reduction for ordinary program achievement. However, he also received a one point assessment for negative institutional behavior.

After consideration of all the factors and information presented at the hearing, the Commission concluded, in a Notice of Action dated May 26, 1999, that Nicks was "a more serious risk than indicated by your D.C. Grid Base Point Score in that you have a history of violence in that you were involved in two separate robberies resulting in the murders of both victims. Moreover, the victim in the prior robbery murder was especially vulnerable in that she was an elderly 84-year-old woman. Additionally, in the instant offense you ordered your codefendant to shoot your victim in cold blood when he resisted the attempted robbery. Your behavior indicated a wanton disregard for human life and it is unlikely that your risk to commit violent or assault offenses will appreciably diminish within the established 22-28 months rehearing guidelines." (Doc. 9-2, p. 8). Thus, the Commission found that a departure from the

rehearing guidelines was warranted, denied parole and continued Nicks for a rehearing in February 2005, after service of 60 months from his parole eligibility date of February 14, 2000.

Subsequent to Nicks' initial parole hearing, the Commission amended the guidelines found at 28 C.F.R. § 2.80 to provide for the granting of "presumptive parole dates" up to three years in the future, in contrast to the earlier system under which parole was either granted or denied at each hearing, and the guidelines indicated the time served prior to another consideration for parole release. These revised guidelines "apply at an initial hearing or rehearing conducted for any prisoner." However, for those prisoners given initial hearings under the guidelines in effect from August 5, 1998, to December 3, 2000, like Nicks, the rule provides that the new guidelines are to be applied to them subject to the "conversion rules" found at 28 C.F.R. § 2.80(o).[2] 28 C.F.R. § 2.80(a)(5).

---

[2] Pursuant to 28 C.F. R. § 2.80 (o):

(o) Conversion rules for retroactive application of the § 2.80 guidelines. When the guidelines of this section are retroactively applied, the following conversion rules shall be used.

(1) If the prisoner previously had any points added for negative institutional behavior under the guidelines formerly found in the Appendix to § 2.80 (2000) (i.e., the guidelines in effect from August 5, 1998 through December 3, 2000), the total guideline range shall be increased by the lesser of:

(i) The guideline range from § 2.36 found to apply to the prior misconduct; or

(ii) The range of months obtained when the number of points previously added for negative institutional behavior is multiplied by the rehearing range applicable under the guidelines in the former Appendix to § 2.80 (e.g., if two points previously were added for misconduct and the applicable rehearing range was 18-24 months, then 36-48 months (2 x 18-24) would be added).

A rehearing was held on January 12, 2005, at which time the Commission "converted" Nicks' guidelines pursuant to the amended and modified District of Columbia parole regulations codified at 28 C.F.R. § 2.80. See 28 C.F. R. § 2.80(a)(5) (requiring application of amended rule to prisoners who received initial hearings between August 5, 1998, and December 3, 2000). The Commission first calculated his guidelines as it would have at an initial hearing under the new rule, then followed the procedure for a rehearing.[3]

Nicks' case was evaluated as follows:

> As of today's hearing the subject has been in custody for approximately

---

(2) If negative institutional behavior previously was sanctioned by the application of a guideline range at § 2.36, the total guideline range shall be increased by that range for that behavior.

(3) If the prisoner previously had an extra point deducted for superior program achievement (as opposed to ordinary program achievement) under the guidelines in the former Appendix to § 2.80, the total guideline range shall be decreased by the rehearing guideline range applicable under the Appendix to § 2.80 guidelines (e.g., if an extra point previously was subtracted for superior (not ordinary) program achievement and the applicable rehearing range was 18-24 months, then 18-24 months would be subtracted).

(4) Misconduct or superior program achievement since the last hearing shall be considered in accordance with the guidelines of this section.

---

[3] This was necessary because the rule regarding "determining the total guideline range at a reconsideration hearing" directs the Commission to "add together the minimum of the total guideline range from the previous hearing, and the minimum of the guideline range for disciplinary infractions since the previous hearing." 28 C.F.R. § 2.80(m). The Commission must first determine what the total guideline range from the previous hearing would have been before it can add guidelines for disciplinary infractions or subtract from the guideline range for program achievement.

> 299 months, which is 67 months below the bottom of his guidelines, should the subject be considered for 6 months for superior program achievement. The subject has a very severe criminal history at a very young age noting that at the age of 12 he committed murder of an 84-year-old victim and at the age of 15 he gave a pistol to a codefendant who he ordered to shoot the victim who attested their attempt to rob him. The subject is currently 41 years of age but still believes that the risk factor is there although the subject has done an outstanding job in regard to his overall adjustment for the last 5 years, the examiner believes the accountability is still warranted in this case. In addition, continued reliability is warranted in this case. In view of this it is recommended that the subject be denied parole and is scheduled for a Rehearing in 5 years (January 2010) at the time the subject will have then served approximately 359 months which will still be 7 months below the bottom of the guidelines.

(Doc. 9-2, p. 11). No departure from the guidelines was warranted. It was recommended that parole be denied. (Id. at p. 12).

By Notice of Action dated January 31, 2005, Nicks was informed that his Total Guideline Range was 366 to 404 months, and that a decision outside the Current Total Guideline Range was not found warranted. (Doc. 9-2, p. 14). As of that date, he had been in custody a total of 299 months. Although the Commission recognized that he was "eligible for consideration under the Commission's presumptive release date policy at 28 C.F.R. 2.75 (effective January 4, 2001)," parole was denied and he was continued to a five-year reconsideration hearing in January 2010 in accordance with 28 C.F.R. § 2.75(a)(2).[4] (Id. at p. 13).

---

[4]§ 2.75 Reconsideration proceedings.

(a)(1) Following an initial or subsequent hearing, the Commission may--

(i) Set an effective date of parole within nine months of the date of the hearing;

Nicks filed the present petition and supporting memorandum of law on May 5, 2005, setting forth the following: he has a liberty interest in parole or reparole; the Commission engaged in impermissible double counting; his due process rights have been violated in contravention of a recent Supreme Court decision; and, "18 U.S.C. § 4602(c) is trumped by D.C. Code § 24-201a, superseded by D.C. Code §§ 24-204, 1-3's." (Doc. 2, pp. 9-18).

## II. Discussion

It is well settled that parole eligibility has been committed to the discretion of the Commission, which must consider all relevant and reasonably available information. United States v. Addonizio, 442 U.S. 178 (1979); Campbell v. United States Parole Commission, 704

---

(ii) Set a presumptive parole date at least ten months but not more than three years from the date of the hearing;

(iii) Continue the prisoner to the expiration of sentence if the prisoner's mandatory release date is within three years of the date of the hearing;

(iv) Schedule a reconsideration hearing at three years from the month of the hearing; or

(v) Remand the case for a rehearing on the next available docket (but no later than 180 days from the date of the hearing) for the consideration of additional information.

(2) Exceptions.

(i) With respect to the rule on three-year reconsideration hearings. If the prisoner's current offense behavior resulted in the death of a victim and, at the time of the hearing, the prisoner must serve more than three years before reaching the minimum of the applicable guideline range, the Commission may schedule a reconsideration hearing at a date up to five years from the month of the last hearing, but not beyond the minimum of the applicable guideline range.

F.2d 106 (3d Cir. 1983); 28 C.F.R. § 2.19. The Commission also exercises authority over District of Columbia Code offenders pursuant to § 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, and D.C. Code § 24-209. See 28 C.F.R. § 2.70. Therefore, the Commission has authority over Nicks, a D.C. offender. The guidelines for D.C. offenders are regulated by 28 C.F.R. § 2.80.

A. Liberty Interest

Nicks argues that "the former District of Columbia's Board of Parole system, did indeed, create a protectible [sic] liberty interest in parole release or reparole for D.C. Code Offenders, pursuant to 'old law' - D.C. Code § 24-209." (Doc. 2, p. 9). Liberty interests are of two types: those issuing directly from the Constitution and those created by state law. Nicks does not have a direct constitutional liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979). As to liberty interests created by state law, mandatory language in applicable state laws and regulations may suffice to create a liberty interest. See, e.g., Hewitt v. Helms, 459 U.S. 460, 471-72 (1983).[5]

Nicks cannot point to any such mandatory language here. He argues that D.C. Code § 24-409 creates a protected liberty interest in parole release or reparole for D.C. Code offenders. (Doc. 2, p. 9). This statute simply states as follows:

---

[5] In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court adjusted the Hewitt analysis in considering a prisoner's challenge of his placement in disciplinary segregation. In Ellis v. District of Columbia, 84 F.3d 1413 (D.C.Cir.1996), it was found that Sandin only alters the liberty-interest analysis applicable to claims relating to "the day-to-day management of prisons," and that it does not apply to parole-related claims. See id. at 1418. Thus, Sandin is inapplicable to Nicks' liberty interest claim.

7

> The Board of Parole created by § 723a of Title 18, United States Code, shall have and exercise the same power and authority over prisoners convicted in the District of Columbia of crimes against the United States or now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the District Board of Parole over prisoners confined in the penal institutions of the District of Columbia.

DC ST § 24-409. Clearly, this statute does not create a liberty interest in parole release.

Moreover, courts have consistently held that the D.C. parole statute, and regulations which apply to D.C. Code offenders, even after they are transferred to the jurisdiction of the United States Parole Commission, do not create a liberty interest in parole. See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C.1995) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C. Cir. 1996) (finding D.C. parole statute and regulation do not create any liberty interest in parole because parole authorities retain discretion to make decisions outside the guideline range established by the regulatory scoring scheme.).[6] Nicks claim of a liberty interest has no merit.

B. Double counting

"Double-counting" occurs when the Commission impermissibly considered the same factor both in determining the applicable guideline range, and as a reason to depart from that range. Malik v. Brennan, 743 F.Supp. 639, 644 (W.D.Wis.1990). The Third Circuit Court of Appeals concluded that "(s)ince the purpose of the guidelines is to set forth the factors that the

---

[6]Nicks also relies upon two federal regulations; 28 C.F.R. §§ 2.73, 2.80 in support of his argument. (Doc. 2, p. 9).

8

Commission should consider in setting a presumptive release date, it would be irrational and arbitrary to use those same factors to take a prisoner outside the guidelines." Harris v. Martin, 792 F.2d 52, 54 (3d Cir. 1986); see Romano v. Baer, 805 F.2d 268, 271 (7th Cir.1986) (finding that double-counting constitutes an abuse of discretion.); Muhammad v. Mendez, 200 F.Supp.2d 466, 472 (M.D.Pa. 2002).

In the Notice of Action, it is specifically stated that "a decision outside the Current Total Guideline Ranges at this consideration is not found warranted." Because the decision was not outside the guideline range, Nicks double-counting argument must fail.

Nicks fares no better in arguing that the Commission's impermissible double-counting resulted in a rehearing outside the guidelines. The decision to continue him to a five-year rehearing is specifically provided for in the applicable regulation, which states that, "[w]ith respect to the rule on three-year reconsideration hearings. If the prisoner's current offense behavior resulted in the death of a victim [as is the case here] and, at the time of the hearing, the prisoner must serve more than three years before reaching the minimum of the applicable guideline range, [also the case here], the Commission may schedule a reconsideration hearing at a date up to five years from the month of the last hearing, but not beyond the minimum of the applicable guideline range." 28 C.F.R. § 2.75(a)(2)(i). As noted in the Notice of Action, at the time of his reconsideration hearing, Nicks will be approximately 7 months below the minimum guideline. Hence, there is no departure from the guidelines and, therefore, no double-counting.

C. <u>Reliance On Facts Not Before The Jury</u>

Nicks argues that the "Commission's determination(s) to deny parole were due to the specific so-called 'countervailing factor' of unusual cruelty to victim(s) which was based upon additional factual findings that were (a) not charged in the Petitioner's Grand Jury original Indictment, (b) submitted to a jury, and (c) proven beyond a reasonable doubt, plus (d) found by the [petit] jury beyond a reasonable doubt." (Doc. 2, p. 12). In support of his argument, Nicks relies on <u>U.S. v. Booker</u>, 543 U.S. 220 (2005), <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

In <u>Blakely</u>, the Supreme Court announced a rule that the Fifth and Sixth Amendments require that any fact that increases the punishment for an offense, regardless of whether that punishment falls below the statutory maximum for the offense, must be found by the jury, and beyond a reasonable doubt. <u>Blakely</u>, 542 U.S. 296. In arriving at this conclusion, the <u>Blakely</u> Court relied on its previous decisions in <u>Apprendi</u>, 530 U.S. 466, and <u>Ring</u>, 536 U.S. 584. In <u>Booker</u>, the Supreme Court extended its holding in <u>Blakely</u> to the Federal Sentencing Guidelines and explicitly reaffirmed the rule announced in <u>Apprendi</u>, that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Booker</u>, 543 U.S. at 244.

Nicks' reliance on the above Supreme Court caselaw is misplaced. These decisions address the sentencing phase of a criminal prosecution. As noted by respondent, "It is settled

Supreme Court law that the parole process is not part of the criminal prosecution; rather, 'parole arises after the end of the criminal prosecution, including the imposition of sentence.' Morrissey v. Brewer, 408 U.S. 471, 480 (1972)." (Doc. 9, p. 13).

Moreover, even if Nicks were to overcome the above hurdle, generally, the Supreme Court does not apply new rules of constitutional procedure to cases that have become final before the rule was announced. See Schriro v. Summerlin, 542 U.S. 348, 352 (2004). Every Court of Appeals to address the issue thus far has concluded that the Supreme Court's sentencing decisions do not apply retroactively to cases on collateral review. See United States v. Price, 400 F.3d 844 (10th Cir. 2005); Bey v. United States, 399 F.3d 1266 (10th Cir. 2005); Humphress v. United States, 398 F.3d 855 (6th Cir. 2005); Varela v. United States, 400 F.3d 864 (11th Cir. 2005); Green v. United States, 397 F.3d 101 (2d Cir. 2005) (*per curiam*); McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005). This prohibition applies here. Nicks' 1981 conviction became final well before the decisions upon which he relies.

D. 18 U.S.C. § 4602(a)

Nicks argues that § 4602(a) is "trumped by D.C. Code § 24-201(a), superseded by D.C. Code §§ 24-204. 1-3's." (Doc. 2, p. 13). Nicks' argument is inapposite. The applicable statute for parole decision related to D.C. offenders is the D.C. Code, not the federal parole statutes. Because 18 U.S.C. § 4206 is a federal parole provision, it does not apply to D.C. offenders.

11

An appropriate Order will enter.

Dated: July 31, 2006

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| JOSEPH NICKS, | : | CIVIL NO . 3:CV-05-0919 |
|---|---|---|
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN JOSEPH SMITH, | : | |
| Respondent | : | |

## ORDER

**AND NOW**, to wit, this 31st day of July 2006, in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus is **DENIED**.

2. The Clerk of Court is directed to **CLOSE** this case.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court